COURT OF APPEALS
DECISION
DATED AND FILED

August 4, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1890-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2021CF1024

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ROBERT W. WILSON,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Outagamie County: MARK J. McGINNIS, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Robert Wilson appeals from a judgment of conviction entered following a jury trial. He also appeals from the circuit court's

order denying his motion for postconviction relief. On appeal, Wilson argues that the prosecutor at his jury trial made improper statements to the jury during her closing argument that shifted the burden of proof. For the following reasons, we affirm.

## BACKGROUND

¶2 Following a three-day trial, a jury found Wilson guilty of one count of repeated sexual assault of a child, Jennifer,[1] contrary to WIS. STAT. § 948.025(1)(d) (three or more violations of WIS. STAT. § 948.02(1)(e)).[2]

¶3 At the trial, Jennifer testified that Wilson had touched her on her "front privates" over her clothes on more than three occasions. The State also played an audiovisual recording of Jennifer's forensic interview for the jury, in which Jennifer described at least five instances of Wilson sexually assaulting her. The forensic interviewer, Jennifer's teacher, a family member of Jennifer's, and a social worker all testified regarding Jennifer's disclosures to them of Wilson's sexual assaults. Furthermore, the circuit court informed the jury that the parties had stipulated to the fact that "Wilson was convicted of two counts of

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2023-24), we use a pseudonym when referring to the victim in this case. All references to the Wisconsin Statutes are to the 2023-24 version.

[2] To obtain a guilty verdict, the State needed to prove that Wilson committed three or more violations of WIS. STAT. § 948.02(1)(e) during the specified time period. *See* WIS. STAT. § 948.025(1)(d); WIS JI—CRIMINAL 2107. To prove that Wilson violated § 948.02(1)(e), the State was required to establish that Wilson had "sexual contact" with Jennifer (with the intent to become sexually aroused or gratified or to sexually degrade or sexually humiliate Jennifer) and that Jennifer was under 13 years of age at the time of the assault. *See id.*; WIS JI—CRIMINAL 2102E.

fourth-degree sexual assault involving an 11-year-old, female child for his conduct" in 2008.

¶4 During the State's closing argument, the prosecutor made numerous references to the State's burden to prove Wilson's guilt beyond a reasonable doubt. For example, the prosecutor commented that "the defendant sits here as an innocent man until I prove that he is guilty beyond a reasonable doubt." The prosecutor then stated,

> I think this comes down to whether you believe [Jennifer] or whether you believe the defendant. He's charged with one count of repeated acts of sexual assault of a child. And if you believe what [Jennifer] said, I believe the defendant is guilty and you should return a verdict of guilty. If you do not believe [Jennifer] and you believe the defendant, I have not proven my case and you should return a verdict of not guilty.
>
> … [O]bviously, if it was just that, you wouldn't have 13 pages of instructions. However, I think, really, it can just be boiled down to that. This is a situation where it comes down to two people's words. Who do we believe?
>
>  ….
>
> … I keep focusing on [Jennifer] and the defendant because those are really, you know, the two people involved. If you believe [Jennifer], he's guilty. If you believe the defendant, he's not. It's as simple as that.[3]

¶5 Wilson's counsel responded to the prosecutor's above comments in his closing argument in the following manner:

> The State said, if you believe [Jennifer], you have got to find [Wilson] guilty. And if you believe [Wilson], you got

---

[3] Wilson's counsel objected to the prosecutor's closing comments during a sidebar prior to providing his closing argument. Defense counsel asserted that the State impermissibly shifted the burden of proof by arguing to the jury that their verdict "comes down to believing … [Jennifer] or believing Mr. Wilson." The circuit court overruled the objection.

> to find him not guilty. I don't agree with that because, first of all, it's not that simple.… [T]hat can't be your only option, to believe one or the other. You may believe [Jennifer], but that's not enough. You may doubt [Wilson], but that's not enough. You might think that this could have happened; that's not enough. You may think that this might have or probably happened, but that's not enough. You have got to be convinced beyond a reasonable doubt.

In rebuttal, the prosecutor commented:

> You all collectively can determine, again, whether you believe [Jennifer] or not. If you think [Jennifer] is lying, you must find the defendant not guilty. But if you believe [Jennifer], that is enough.… If you believe the touching took place, and that that touching was for the purpose of sexual gratification, and that you believe it happened three times … in the time period, then the testimony of [Jennifer] is enough. There's not an instruction that says you need more. If you believe one witness and you think that I have met my burden with just that one witness, then that's all we need. If you believe a combination of what everyone said is enough to reach my burden, then I have reached my burden. But I think, again, that this really boils down to two very different stories. The defendant clearly says he never did it. [Jennifer] says he did. And if you find that he did, and he did it with the purpose of sexual gratification, then I would ask that you find him guilty.

¶6 Wilson filed a motion for postconviction relief seeking a new trial under the theories of plain error, the interest of justice, and ineffective assistance of counsel. Wilson argued that the prosecutor's above comments impermissibly shifted the burden of proof because the State could not prove all of the elements of the offense through Jennifer's testimony alone.[4] More specifically, Wilson argued:

---

[4] Wilson sought relief through plain error, interest of justice, and ineffective assistance of counsel theories because, according to Wilson's postconviction motion, his defense counsel "did not move for a mistrial and a court may, therefore, consider the objection waived."

> Whether the jury believed the victim's account was necessary for the [S]tate to establish that at least three instances of touching occurred; however, it was not sufficient to obtain a conviction because the [S]tate also needed to prove the underlying sexual motivation behind the touching (that is, that Mr. Wilson acted with the intent to become aroused or in order to humiliate the victim).

According to Wilson, the "the jury could have found … that the touching was accidental" and "not sexually motivated in nature." Thus, Wilson argued, this case was an "asymmetrical" one under *State v. Bell*, 2018 WI 28, 380 Wis. 2d 616, 909 N.W.2d 750.

¶7 Following briefing by the State and oral arguments from the parties, the circuit court denied Wilson's motion in an oral ruling without holding an evidentiary hearing. The court stated that this was "not a case where Mr. Wilson … got up on the stand and said, I did touch her, but it was an accident or mistake or inadvertent or had nothing to do with sexual gratification." Accordingly, the court reasoned that Jennifer and Wilson "testified to two separate sets of facts" and that "there was no way you could reconcile the testimony." The court further concluded that Jennifer's testimony "was more than enough for" the jury to find that the sexual gratification element had been proven beyond a reasonable doubt. The court thereafter entered a written order encompassing its oral ruling, and Wilson now appeals.

## DISCUSSION

¶8 On appeal, Wilson renews his challenge to the prosecutor's closing comments, claiming the comments constituted plain error because they

5

unconstitutionally, in violation of his due process rights, shifted the burden of proof and denied him a fair trial.[5]

¶9 We will not remedy errors under the plain error doctrine "unless they are 'obvious and substantial[,]' and 'so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time.'" *Bell*, 380 Wis. 2d 616, ¶8 (alteration in original; citation omitted). "Courts should use the plain error doctrine sparingly." *State v. Jorgensen*, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77. "If the defendant shows that the unobjected to error is fundamental, obvious, and substantial, the burden then shifts to the State to show the error was harmless." *Id.*, ¶23. "This court independently reviews the record to determine if a new trial is warranted due to plain error." *State v. Nelson*, 2021 WI App 2, ¶46, 395 Wis. 2d 585, 954 N.W.2d 11 (2020).

¶10 "Counsel is allowed considerable latitude in closing arguments, with discretion given to the trial court in determining the propriety of the argument." *Bell*, 380 Wis. 2d 616, ¶39 (citation omitted). A prosecutor "steps across the permissible boundary" by mischaracterizing the law or the evidence. *Id.*, ¶40. If a prosecutor crosses "the permissible boundary, we must then determine whether the incursion is so significant (either alone or in combination with other infractions) that it renders the entire trial unfair." *Id.*

¶11 Both parties agree that *Bell* controls the outcome here. In *Bell*, the State charged the defendant with sexually assaulting two children, and the case

---

[5] Wilson does not argue on appeal that the circuit court erred by not granting him an evidentiary hearing on his postconviction claim of ineffective assistance of counsel, and, therefore, we do not address that postconviction claim further.

proceeded to a jury trial. *Id.*, ¶¶2, 4. During closing arguments, "[t]he prosecutor said it would be improper for the jury to find [the defendant] not guilty unless the victims lied, while the defense said such a finding was necessary because they did." *Id.*, ¶42.

¶12    On appeal, our state supreme court concluded that the prosecutor's statements were not improper. The court first determined that "the prosecution and defense theories of the case were mirror[ ]images: The prosecution said [the victims] were telling the truth, [and] the defense said they were not." *Id.* As explained by the court, the defendant did not argue that the victims' "description of events failed to satisfy the statutory elements of the crimes with which he was charged. He did not argue mistaken identity or assert that someone else bore responsibility for the assaults. He did not argue the actions had been misconstrued." *Id.*, ¶43. Rather, the court explained that "[t]hrough comments in voir dire, the outline of the case provided in opening statements, the examination of witnesses, and closing arguments, the defense offered the jury one reason, and one reason only, for acquitting him—to wit, the untruthfulness of the victims." *Id.*

¶13    The *Bell* court further concluded that there was not "any meaningful distinction … between the defense's assertion that the jury must find" the defendant "not guilty because the victims lied and the prosecution's argument that the jury may not make such a finding unless they did." *Id.*, ¶44. In particular, the court stated that this was a "symmetrical" case because if the jury believed that the victims were telling the truth, "their testimony satisfied all of the elements of the crimes with which [the defendant] was charged. Therefore, the only way [the defendant] could have won an acquittal would have been to falsify that condition—that is, convince the jury that the victims lied." *Id.*, ¶¶46-47.

7

¶14 The court concluded that the case before it was not an "asymmetrical" one—i.e., one in which it is not necessary for the jury to disbelieve a particular witness to acquit the defendant. *See id.*, ¶45. For example, an asymmetrical case occurs when "the victim is the sole source of evidence for some (but not all) of the elements of the crime." *Id.* Using this example, it would be "sufficient for an acquittal that [the defendant] convince the jury not to believe the victim, because that negatives the elements of the crime for which [the victim] was the sole source of evidence." *Id.* "But it is not necessary for the jury to disbelieve the victim [in order to acquit the defendant], because (in this example) there were other elements of the crime the State had to establish, and the jury could legitimately conclude the State failed to do so." *Id.* (emphasis omitted). Therefore, the court concluded that the prosecutor's arguments were not improper. *Id.*, ¶52. They were the "equivalent" of "asking the jurors to carefully weigh the victims' credibility." *Id.*, ¶51.

¶15 Here, Wilson claims that the prosecutor misstated the law by informing the jury in her closing arguments that its "ability to acquit was premised on whether Wilson could prove [Jennifer] lied." Wilson argues that the prosecutor "undermined the fairness of the proceedings by shifting the [S]tate's burden onto the defense, removing the jury's ability to reach reasonable doubt … without proof that [Jennifer] lied."

¶16 However, as the State argues, Wilson's characterization of the prosecutor's comments is not accurate. Contrary to Wilson's characterization, the prosecutor repeatedly informed the jury, both in her opening statement and her closing arguments, that the State alone carried the burden to prove Wilson's guilt beyond a reasonable doubt. While the prosecutor argued, "If you think [Jennifer] is lying, you must find the defendant not guilty," this argument has a much

different meaning than stating the defense must prove that Jennifer lied. The State correctly observes that "[n]ot once d[id] the prosecutor state … that the jury's 'ability to acquit was premised on whether Wilson could prove that [Jennifer] lied.'"

¶17 The prosecutor's comments challenged by Wilson on appeal are better characterized as informing the jury that its verdict "boiled" down to whether it believed Wilson or Jennifer. According to the prosecutor, the jury should find Wilson guilty if it believed Jennifer, and it should acquit Wilson if it did not believe Jennifer or thought that she was lying. The prosecutor further explained, correctly, that the jury would need to find that Wilson touched Jennifer for the purpose of sexual gratification in order to convict him. As the State argues on appeal, "the prosecutor's comments in the instant case are further from improper commentary than the statements in *Bell*. Unlike *Bell*, the prosecutor in this case never stated that 'it would be improper for the jury to find [the defendant] not guilty unless the victims lied.'" *See id.*, ¶42.

¶18 To the extent *Bell* nonetheless controls, as the parties contend, this case is similar to *Bell* in that the prosecution and defense theories of the case here were mirror images. Namely, the prosecution said that Jennifer was telling the truth and that the sexual assaults occurred, and the defense said the assaults never occurred and that Jennifer was either lying or incorrectly believed that she was sexually assaulted. *See id.*

¶19 Defense counsel claimed in his opening statement that the State would fail to meet its burden because Wilson "did not sexually assault" Jennifer and that "there's some facts here that will show this didn't happen, that this couldn't have happened, that [Wilson] is innocent." Defense counsel further

9

claimed that the jury would see that Jennifer "struggles to tell the truth" in her forensic interview and that she states in the interview that she "might make up a lie."

¶20    Moreover, as defense counsel explained in his closing argument, the defense's theory was that the sexual assaults "didn't happen" and that Wilson was "never in a position"—and never "had the opportunity"—to sexually assault Jennifer. Defense counsel further argued to the jury, after quoting portions of Jennifer's forensic interview and trial testimony at length, that "it's very reasonable that [Jennifer] is lying" or that she "could truly believe this happened to her … when it actually did not happen." For example, defense counsel argued that Jennifer has "some interest in the outcome of this case" because she "doesn't want [Wilson] back" in her life and that she was seeking attention. Defense counsel further claimed that the defense was not arguing that Wilson "accidentally touched her. We're not claiming he was a doctor. We're not claiming he was trying to heal an injury that she had. We're saying that this didn't happen."

¶21    Consistent with this theory of defense, defense counsel asked Jennifer on cross-examination whether she had witnessed people having sex on television, whether she was caught watching things on YouTube that she was not supposed to watch, and whether it was true that she did not like that Wilson spent so much time with one of her family members. In addition, Wilson testified in his own defense. He stated that none of Jennifer's allegations were true and that he did not do "anything that she testified to." Wilson further testified that "none of those situations ever came arise [sic] with me and her. Never."

¶22    Therefore, Wilson's defense "offered the jury one reason, and one reason only," for acquitting him: that the assaults never occurred. *See id.*, ¶43. To

demonstrate this theory to the jury, the defense proposed that Jennifer was either lying or that she somehow incorrectly believed that she was sexually assaulted.[6] *See id.* As explained, the State argued the exact opposite to obtain a conviction: Jennifer was not lying and the assaults did occur.

¶23 We further conclude that this case is of the "symmetrical" type discussed in ***Bell*** because Jennifer was the sole source of evidence for all of the elements of the crime alleged. *See id.*, ¶45. Wilson disagrees, contending that Jennifer's testimony alone was insufficient to satisfy two elements of the charged offense. Wilson first argues that "[a] reasonable jury could have found that [Jennifer's] testimony, credibility aside, failed to establish that three separate touchings had in fact occurred." According to Wilson, "it is reasonable that a jury could conclude that [Jennifer] may have been telling the truth, even if a little fuzzy on the details as to where and how the contact occurred, but that she was describing only a single incident."[7]

---

[6] On appeal, Wilson contends that his defense counsel also argued to the jury that "even if [Jennifer] were credible in the jury's eyes, her testimony failed to meet the [S]tate's burden of proof to establish that three touchings occurred." To the extent Wilson contends that his counsel advanced a theory that Jennifer was describing a single sexual assault—i.e., even if Wilson sexually assaulted Jennifer, it did not occur on "at least" three occasions, *see* WIS. STAT. § 948.025(1)(e)—this argument is not supported by the record.

Although Wilson's counsel did argue to the circuit court, when moving for a directed verdict, that Jennifer "didn't clearly articulate at least three instances" of sexual assault, Wilson fails to provide an accurate record citation to where counsel made this argument to the jury or otherwise tailored the defense in this manner.

[7] We pause to note that Wilson deprived the circuit court of an opportunity to consider this argument by conceding in his postconviction motion the issue of "[w]hether the jury believed the victim's account was necessary for the [S]tate to establish that at least three instances of touching occurred." He further explained in oral argument before the circuit court that "[t]here were the three touchings that needed to be proven, and that would be what the victim could testify to." The State, however, does not contend that Wilson forfeited this argument on appeal, and we consider its merits.

¶24    We disagree that Jennifer's testimony alone was insufficient to satisfy the State's burden to prove that Wilson committed three or more violations of WIS. STAT. § 948.02(1)(e) within the alleged time period.  Jennifer testified that when she was in the second grade, she disclosed that Wilson had "inappropriate[ly] touch[ed]" her on her "front privates" with "[h]is hand" on more than three occasions.  While Wilson argues on appeal that Jennifer's trial testimony describing the assaults differed from those described by Jennifer in her forensic interview, the fact remains that if the jury believed Jennifer, her testimony and/or her statements from her forensic interview satisfied the element that Wilson sexually assaulted her three times during the alleged period.  *See Bell*, 380 Wis. 2d 616, ¶47.

¶25    Furthermore, as noted above, *see supra* note 6, Wilson's counsel never argued to the jury that Jennifer "may have been telling the truth, even if a little fuzzy on the details as to where and how the contact occurred, but that she was describing only a single incident."  Again, Wilson's sole theory of defense was that the sexual assaults "didn't happen" and that Wilson was "never in a position"—and never "had the opportunity"—to sexually assault Jennifer.

¶26    Wilson further contends that Jennifer's testimony alone was insufficient to satisfy the sexual gratification element of the offense charged.  Wilson argues that "the jury might have found [Jennifer] credible but that her testimony did not establish beyond all reasonable doubt that each of the touchings was done for the purpose of sexual gratification."  Wilson states that "[n]ot every allegation was accompanied by conduct that a jury could interpret as sexual in nature" and that Jennifer's forensic interview "includes instances where Wilson was clearly playing with her."

12

¶27    As the State argues, however, "[t]he touching [Jennifer] reported that Wilson engaged in [is] entirely inconsistent with a claim that the touches were accidental or otherwise anything other than for the purpose of sexual gratification." Even if some of the instances described by Jennifer in her forensic interview could be construed as genuine "playing," many cannot. The State outlines at least five instances of touching described by Jennifer in which Wilson clearly acted with the intent to obtain sexual gratification, particularly in light of the uncontroverted other-acts evidence. Wilson fails to respond to the State's position in any substantive manner to explain how these instances described by Jennifer and outlined by the State on appeal do not meet the element of sexual gratification. Consequently, if the jury believed Jennifer, her testimony and/or her statements from her forensic interview satisfied the element that Wilson had sexual contact with Jennifer with the intent to become sexually aroused or gratified or to sexually degrade or sexually humiliate her. *See Bell*, 380 Wis. 2d 616, ¶47.

¶28    Therefore, there was no "meaningful distinction" in this case between the defense's assertion that the jury must find Wilson not guilty because Jennifer was not to be believed (i.e., that she was lying or that she erroneously believed she was sexually assaulted) and the prosecution's argument that the jury may not make such a finding unless it found that Jennifer was lying or it did not

13

believe her recollection of the assaults. *See id.*, ¶44. In other words, "the logical prerequisites for each party's success [were] symmetrical."[8] *See id.*, ¶46.

¶29 In short, the prosecutor never stepped "across the permissible boundary" during her closing arguments, and there was no error, much less a fundamental, obvious, and substantial error.[9] *See id.*, ¶¶8, 40.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] Given the foregoing, we further conclude that the federal case law cited by Wilson to support his position that the prosecutor's comments were improper is distinguishable. In those cases, the prosecutors' statements were deemed improper because the juries could have acquitted the defendants even if they did not fully believe the government's witnesses, contrary to the prosecutors' statements. *See United States v. Cornett*, 232 F.3d 570, 574 (7th Cir. 2000); *United States v. Vargas*, 583 F.2d 380, 387 (7th Cir. 1978). As our state supreme court stated in *Bell*, the error in the prosecutors' statements in *Vargas* and *Cornett* is that the juries in those cases "could have believed the witnesses but acquitted anyway because they did not agree with the conclusions the witnesses drew from what they observed." *State v. Bell*, 2018 WI 28, ¶49, 380 Wis. 2d 616, 909 N.W.2d 750.

[9] Wilson also asks this court to "use its discretionary reversal authority … because the improper comments prevented the real controversy from being fully and fairly tried." As we have explained, the prosecutor's comments were not improper under *Bell*, and we therefore refuse to exercise our discretionary reversal authority in this instance.